IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Kristal Nogowski,              ) | |
|                                ) | |
|             Plaintiff,         ) | **MEMORANDUM OPINION AND** |
|                                ) | **ORDER ON MOTION FOR** |
| vs.                            ) | **SUMMARY JUDGMENT** |
|                                ) | |
| Case Corporation, Inc. and Vance Barta,    ) | |
|                                ) | Civil File No. 3:04-cv-130 |
|             Defendants.        ) | |

Before the Court is a motion by Defendants for summary judgment. Plaintiff filed a brief in opposition. Plaintiff withdrew her request for a hearing on the motion.

**SUMMARY OF DECISION**

On a routine basis, Plaintiff alleges that her supervisor, Vance Barta, would follow her around as she worked, and he would stand behind her and watch her work. He also required her to inform him when she was experiencing "woman problems" and would need extra time in the restroom. Barta did not treat his male employees the same way. In addition, Barta gave Plaintiff less time to clean up her work area than he gave her male coworkers in the same department. When Plaintiff worked in the "blow off" room, where she would become soaking wet causing her clothing to cling to her body, Barta would stop by the window to the room and observe her more frequently and for longer periods of time than when he would observe his male employees working in the blow off room. Plaintiff alleges that this conduct caused her psychological injury. These allegations are sufficient to sustain a sexual harassment claim at the summary judgment stage.

On June 6, 2006, Plaintiff complained about Barta spying on her while she worked in the

1

blow off room, and she refused to work in the room. Less than a week after this complaint, Case terminated her employ. When male employees would refuse Barta's order to work in the blow off room, no disciplinary action was taken against them. Plaintiff has presented a sufficient prima facie case of retaliation.

Under the North Dakota Whistleblower statute, an employee must bring a claim within one hundred eighty days of the completion of the grievance process. Plaintiff did not bring her claim within one hundred eighty days, therefore it is barred by the statute of limitations.

North Dakota permits conduct that forms the basis for sexual harassment to also form the basis of an intentional infliction of emotional distress claim. Based on the conduct of her supervisor, Plaintiff has presented sufficient facts to survive a motion for summary judgment on this claim.

An employer is not liable for punitive damages if it acts in good faith to comply with Title VII. Case had a sexual harassment policy, and it held a training session, which Barta attended. When Plaintiff made her complaints about Barta's behavior, another supervisor at Case and the union steward would allow her to give her account of the situation. Since Case acted in good faith to comply with Title VII, punitive damages are not permitted.

## FACTUAL BACKGROUND

With an effective hire date of May 14, 2001, the plaintiff, Kristal Nogowski, started working for the defendant, Case Corporation (hereinafter "Case"), as a manufacturing associate. Case Corporation, or CNH America LLC, manufactures agricultural and industrial equipment at its Fargo plant. Plaintiff was a member of the union.

In 2002, Plaintiff was transferred to the paint line. Vance Barta was her supervisor on the

2

paint line. Plaintiff alleges that Barta frequently asked her to do other male employees' work while the men just stood around, and she alleges that Barta supervised her more closely than he did the male employees. Barta also told Plaintiff to inform him when she was menstruating. Barta would give Plaintiff five minutes to clean up her work area while he gave the male employees in the same department twenty minutes to clean up their work areas.

On April 16, 2002, Plaintiff filed a grievance against Barta over these differences in treatment. The day after she filed her grievance, Barta disciplined her for talking to coworkers.

During the week of June 3, 2002, Barta ordered Plaintiff to work in the "blow off" room. This room was used to dry off parts as they came off the assembly line. The employee would use a hand-held pressurized air hose to blow the debris and water off the parts. This work would cause the employee to get very wet, causing his or her clothing to become soaked.

A Case employee, John Greenly, observed Barta looking through the window of the blow off room while Plaintiff was working. Greenly noticed that Barta would stop by the window more times than he would with other employees, and Barta would watch Plaintiff longer than he watched other employees. Greenly told Plaintiff about Barta's behavior.

On June 6, 2002, after she learned what Barta had been doing, Barta ordered Plaintiff to work in the blow off room, but she refused. A fact-finding meeting was held with a union steward and eventually Plaintiff agreed to do the work. However, once the fact-finding meeting had ended, all the work in the blow off room had allegedly been completed. Case suspended Plaintiff. During the suspension, Case investigated the allegations made during the fact-finding meeting. Following this investigation, Case terminated Plaintiff's employ effective June 11, 2002. It stated that its reason

3

for the termination was her insubordination for refusal to do work.

Following her termination, Plaintiff filed a grievance pursuant to the Collective Bargaining Agreement (hereinafter "CBA") between the union and Case. The grievance was resolved by an arbitrator, and Plaintiff was ordered reinstated without back pay.

In August 2002, Case laid off some employees. Case alleges that it made the decision based on seniority. Case terminated Plaintiff's employ as a part of this layoff.

## ANALYSIS

A party is entitled to summary judgment only if it can show that no genuine issue of material fact exists. Quick v. Donaldson Co., 90 F.3d 1372, 1376 (8th Cir. 1996). A court views the facts in the light most favorable to the non-moving party, but mere allegations are insufficient to defeat summary judgment. Klein v. McGowan, 198 F.3d 705, 709 (8th Cir. 1999). Summary judgment should be used sparingly in the context of employment discrimination or retaliation cases because direct evidence of intent is often difficult or impossible to obtain. Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1117-18 (8th Cir. 2006).

**I. Hostile Work Environment**

To establish a claim of hostile work environment pursuant to Title VII and the North Dakota Human Rights Acts (NDHRA), a claimant must establish that 1) she is a member of a protected group; 2) she was subject to unwelcome sexual harassment; 3) there is a causal nexus between the harassment and her protected group status; and 4) the harassment affected a term, condition, or privilege of employment. Hesse v. Avis Rent a Car Sys., Inc., 394 F.3d 624, 629 (8th Cir. 2005); Opp v. Source One Mgmt., Inc., 591 N.W.2d 101, 106 (N.D. 1999). If a plaintiff establishes that

4

a supervisor with authority over her created the hostile work environment, the employer can be vicariously liable. Hesse, 394 F.3d at 629. Women belong to a protected group, so Plaintiff meets the first criteria. Quick, 90 F.3d at 1377. It is undisputed that Barta was a supervisor with authority over Plaintiff, which can create liability for Case. Hesse, 394 F.3d at 629.

The second criteria requires the sexual harassment to have been "unwelcome." Id. Harassing conduct is considered unwelcome if it was uninvited and offensive. Id. at 1378 (quoting Burns v. McGregor Electronic Indus., Inc., 989 F.2d 959, 964-65 (8th Cir. 1993)). Deciding whether the conduct was uninvited or offensive will largely turn on credibility determinations made by the trier of fact. Id. "The proper inquiry is whether [the plaintiff] indicated by [her] conduct that the alleged harassment was unwelcome." Id.

The type of conduct that will constitute sexual harassment includes "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." Quick, 90 F.3d at 1377 (citing 29 C.F.R. § 1604.11(a) (1996)). However, the conduct does not have to be explicitly sexual in nature or have explicit sexual overtones. Id.

At an April 15, 2002 meeting with Barta; Nolan Anderson, a supervisor at Case; and Steve Allard, a union steward, Plaintiff objected to the request that she inform Barta when she was experiencing "woman problems" or any other personal problems. (Barta Depo. Ex. 15.) In addition, in an April 16, 2002 grievance, Plaintiff objected to the harassment she was receiving from Barta. (Barta Depo. Ex. 12.) On June 6, 2002, Plaintiff refused to work in the blow off room, and she told Barta that she didn't like him spying on her when she worked in that room. (Arbitration Hr'g Tr. at 81-82.) Viewed in the light most favorable to Plaintiff, these incidents demonstrate the existence

5

of a genuine issue of material fact as to whether Plaintiff indicated that the sexual harassment was unwelcome.

The third criteria is that the harassment must be based on sex. Quick, 90 F.3d at 1378. "Evidence that members of one sex were the primary targets of the harassment is sufficient to show that the conduct was gender based for purposes of summary judgment." Id. (citing Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269-70 (8th Cir. 1993)).

Plaintiff has alleged several harassing incidents that she was subjected to that none of her male coworkers had to endure. These include the allegation that Barta more closely supervised her than her male coworkers. (Arbitration Hr'g Tr. at 107, 172.) Compared with the time he gave the male employees to clean up their work area, Barta gave Plaintiff less time. Barta also required Plaintiff to give him notice when she would need extra time in the bathroom, but he did not make the same request of the male employees. There is a genuine issue of material fact as to whether the harassment was based on sex.

The final criteria is that the harassment affected a term, condition, or privilege of employment. Id. This requires a plaintiff to demonstrate that the alleged harassment was so severe or pervasive that it affected her job. Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 966 (8th Cir. 1999). Title VII doesn't require asexuality or androgyny in the workplace; it only prohibits behavior that is so objectively offensive that it alters the conditions of the victim's employment. Id. (quoting Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 81 (1998)). The behavior is objectively offensive if a reasonable person would find the work environment hostile or abusive. Id. (quoting Oncale, 523 U.S. at 81). A term, condition, or privilege of employment is affected when the

6

harassment causes economic injury, affects the employee's psychological well-being, detracts from job performance, discourages the employee from remaining on the job, or keeps the employee from advancing in her career. Quick, 90 F.3d at 1378.

Plaintiff alleges that she suffered from nausea, anxiety, sleepless nights, and other stress-related symptoms as a result of Barta's actions. (Pl. Ex. F.) She alleges that Barta's unusually close supervising of her, the inquiries about her restroom activities, and the inequities in clean up time happened on a daily basis. In addition, she alleges her refusal to work in the blow off room was the result of feeling uncomfortable with Barta watching her while she worked in the room. This refusal to work allegedly led to the termination. While Plaintiff was eventually reinstated, she did not receive any back pay, which caused an economic injury. Plaintiff has presented sufficient evidence to create a genuine issue of material fact on this final issue; therefore she has established a claim of hostile work environment.

**II. Retaliation Claim**

The McDonnell Douglas burden shifting framework applies to retaliation cases. Wallace, 442 F.3d at 1119. To establish a prima facie case of retaliation, Plaintiff must demonstrate the following factors: 1) she filed a charge of harassment or engaged in other protected activity; 2) her employer subsequently took an adverse employment action against her; and 3) the adverse action was causally linked to her protected activity. Scusa, 181 F.3d at 968. If the plaintiff meets this prima facie showing, then the burden shifts to the employer to articulate a valid, nondiscriminatory reason for its actions. Cross v. Cleaver, 142 F.3d 1059, 1071-72 (8th Cir. 1998). If the employer meets that burden, then the plaintiff must show that the proffered reason was a pretext for retaliation.

Peterson v. Scott County, 406 F.3d 515, 524 (8th Cir. 2005).

Protected activity can consist of either opposing activity made unlawful by Title VII or participating in an investigation under Title VII. Hunt v. Neb. Pub. Power Dist., 282 F.3d 1021, 1028 (8th Cir. 2002). An employee does not engage in protected activity when she does not allege that the conduct at issue is based on sex discrimination. Id.

Plaintiff alleges that she engaged in protected activity on two occasions. The first time was when she filed a grievance on April 16, 2002. On the grievance form, where Plaintiff was to describe the nature of her grievance, she only wrote the word "harassment." When asked about this grievance during an arbitration hearing, Plaintiff explicitly stated that she had not complained about sexual harassment. (Arbitration Hr'g Tr. at 118.) Since Plaintiff did not allege that the harassment was based on sex discrimination, she did not engage in protected activity by filing this grievance. Hunt, 282 F.3d at 1028.

Plaintiff made her other complaint on June 6, 2006. In this complaint she detailed the various conduct Barta had engaged in over the previous nine months including assigning her male coworker's jobs while the men stood around and watched; closely supervising her, so he could ogle her; and requiring her to inform him when she was having "woman problems." (Arbitration Hr'g Tr. at 106-12.) Plaintiff stated that she did not believe in sexual harassment before she was subjected to Barta's conduct over the previous nine months. (Id. at 112.) Since Plaintiff complained to her employer about conduct she thought was based on sex discrimination, this complaint constitutes protected activity.

Following this protected activity, Case terminated her employ, which constitutes an adverse

8

employment action. "An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." Peterson, 406 F.3d at 524 (citations omitted). When establishing a prima facie case at the summary judgment stage, a termination that occurs two weeks after the protected activity is sufficient to establish causation. Id. at 524-25. In this case, Case terminated Plaintiff's employ effective June 11, which is less than two weeks after she engaged in protected activity. Therefore, Plaintiff has established causation, id., and made a prima facie case of retaliation.

Defendant asserts that its legitimate, nondiscriminatory reason for discharging Plaintiff was her insubordination on June 6, 2006, when she refused to do the work that Barta assigned. Defendant alleges that, under the CBA, union employees are supposed to follow orders at all times and complain about them later, which is referred to as the "obey now, grieve later" rule.

It is troubling to believe that an employee's conduct, which is allegedly induced by sexual harassment, could form the basis of an employer's legitimate, nondiscriminatory reason. Generally the legitimate, nondiscriminatory reason is unrelated to employee conduct caused by discrimination. See, e.g., Quick v. Wal-Mart Stores, Inc., 441 F.3d 606, 610 (8th Cir. 2006) (alleging that the termination was for giving discounts to certain customers in violation of store policy); Maxfield v. Cintas Corp. No. 2, 427 F.3d 544, 550 (8th Cir. 2005) (alleging that the transfer was based upon the employee's four consecutive months of commission deficits); Larry v. Potter, 424 F.3d 849, 851 (8th Cir. 2005) (alleging that the denial of the employee's permanent transfer request was due to her excessive absenteeism). The Court has been unable to find a case where a court has held that an

9

employee's unacceptable work performance resulting from a hostile work environment could serve as the basis for an employer's legitimate nondiscriminatory reason. The Court has also been unable to find a case that explicitly held that an employer cannot rely on such a reason. However, the Court need not resolve this issue because Plaintiff has presented evidence to demonstrate that this reason was a pretext for discrimination.

When male employees, such as Robert Sorensen, would refuse Barta's order to work in the blow off room, Barta would not discipline them. (Arbitration Hr'g Tr. at 186.) A plaintiff may show pretext by presenting evidence "that other similarly situated individuals who were not in the plaintiff's protected class engaged in the same conduct but were treated differently." Russell v. City of Kansas City, 414 F.3d 863, 868 (8th Cir. 2005). From the evidence in the record, it appears that Sorensen and Plaintiff both refused to work in the blow off room. While Sorenson, who is male, was not disciplined as a result of this behavior, Plaintiff was terminated. Since an employee who is not a member of Plaintiff's protected class engaged in the same conduct and was treated differently, Plaintiff has shown pretext. Id. Therefore, a genuine issue of material fact exists as to the retaliation claim.

### III. North Dakota Whistleblower Claim

Section 34-01-20(3) of the North Dakota Century Code requires an employee to bring a civil action for employer retaliation within one hundred eighty days "after the alleged violation, completion of proceedings under subsection 4, or completion of any grievance procedure available to the employee under the employee's collective bargaining agreement . . . whichever is later." The reference to subsection 4 refers to proceedings in front of the department of labor. N.D. Cent. Code

§ 34-01-20(4). A civil action is a proceeding commenced in court that does not involve a prosecution by the state against a person charged with a public offense. N.D. Cent. Code § 32-01-06; Olsen v. Koppy, 593 N.W.2d 762, 765 (N.D. 1999).

In this case, Plaintiff did not bring a retaliation complaint to the North Dakota Department of Labor. Under Plaintiff's CBA, her grievance procedure ended on June 27, 2003. This civil complaint was filed on November 16, 2004, which is more than one hundred eighty days after the completion of the grievance procedure.

Plaintiff argues that she filed her EEOC complaint within one hundred eighty days of the completion of the grievance procedure, and within that complaint she alleged retaliation. Given the consistent application of "civil action" throughout the North Dakota Century Code as referring to a court proceeding, an EEOC complaint is not a "civil action." See, e.g., Olsen, 593 N.W.2d at 765 (explaining that a party may appeal from judgments or orders in civil actions). Since Plaintiff did not commence a civil action on her North Dakota employer retaliation claim within one hundred eighty days, it is barred by the statute of limitations. N.D. Cent. Code § 34-01-20(3).

**IV. Intentional Infliction of Emotional Distress Claim**

To establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that there was extreme and outrageous conduct that was intentional or reckless, and this conduct caused severe emotional distress. Dahlberg v. Lutheran Soc. Servs. of North Dakota, 625 N.W.2d 241, 248 (N.D. 2001) (citing Muchow v. Lindblad, 435 N.W.2d 918, 924 (N.D. 1989)). A court initially decides whether the defendant's conduct reasonably may be regarded as extreme and outrageous. Id. at 249. The extreme and outrageous conduct must be so extreme in degree that it

goes beyond all possible bounds of decency, or it is conduct that is utterly intolerable in a civilized society. Id. at 248.

Contrary to other jurisdictions, North Dakota has held that discriminatory conduct may satisfy the extreme and outrageous conduct factor. Swenson v. N. Crop Ins., Inc., 498 N.W.2d 174, 183 (N.D. 1993). In Swenson, the plaintiff's supervisor repeatedly told her that he was pursuing a plan to replace her with men. Id. at 182. Her supervisor also told her that he paid men more because they were men and had to support families. Id. When the office structure was reorganized, Swenson's supervisor demoted her and then paid her less than what she had previously earned in that position. Id. at 183. Then her supervisor promoted a man to her old position and paid him more than she had been earning. Id. In addition, during this reorganization, Swenson's supervisor isolated her by refusing to talk to her and by virtually avoiding any contact with her. Id. The court held that these facts were sufficient to survive the summary judgment inquiry on whether the conduct was extreme and outrageous. Id.

In this case, Barta frequently stood directly behind Plaintiff and watched her work. He would also follow her around when she was using the forklift. He also assigned her other employee's work while that employee would then stand around and talk and joke with coworkers. Barta required Plaintiff to inform him when she was experience "woman problems," and he wanted to know when she would require extra time in the restroom. When Plaintiff was soaking wet in the blow off room such that her clothing clung to her body, Barta would stop by the window frequently to observe her. While this conduct does not rise to the level of the supervisor's behavior in Swenson, the alleged actions here, taken together, are sufficient to reach the conclusion that

12

reasonable persons could differ on whether the conduct was extreme and outrageous. Id.

Defendants do not dispute the other two elements of the intentional infliction of emotional distress claim. Defendants' other argument is that this claim is preempted by section 301 of the Labor Relations Management Act.

Under section 301, when the resolution of a state law claim is substantially dependent upon an analysis of the terms of an agreement made between the parties to a labor contract, that state law claim is preempted by federal labor-contract law. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985). A dispute that is either not related or only tangentially related to the labor contract is not preempted. Id. When the only conduct forming the basis for an intentional infliction of emotional distress claim is a termination authorized by the labor contract, section 301 preempts the emotional distress claim. Flibotte v. Pa. Truck Lines, Inc., 131 F.3d 21, 27 (1st Cir. 1997). When the emotional distress claim is based on alleged conduct inflicted while the plaintiff was employed, the state law claim is not preempted. Knafel v. Pepsi-Cola Bottlers of Akron, Inc., 899 F.2d 1473, 1483 (6th Cir. 1990).

None of the conduct the Court described above as the basis for Plaintiff's intentional infliction of emotional distress claim included her subsequent termination. In her brief, Plaintiff also does not rely on the termination as the basis for the claim. At most, the CBA would be tangentially involved in this claim. Therefore, the emotional distress claim is not preempted by section 301. Knafel, 899 F.2d at 1483.

### V. Punitive Damages

"Federal law imposes a formidable burden on plaintiffs who seek punitive damages in a

13

hostile work environment action premised under Title VII." Henderson v. Simmons Foods, Inc., 217 F.3d 612, 618 (8th Cir. 2000). Punitive damages are available when the plaintiff demonstrates that the employer engaged in a discriminatory practice with malice or with reckless indifference to the federally protected rights of an aggrieved individual. 42 U.S.C. § 1981a(b)(1) (1999). When an employer undertakes good faith efforts to comply with Title VII, it has not acted with malice or reckless indifference to these federally protected rights. Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 545 (1999).

An employer is not liable for punitive damages even when it fails to act on knowledge that a female employee had been sexually assaulted on two occasions by a male coworker. Henderson, 217 F.3d at 618-19 (explaining the holding in Varner v. Nat'l Super Markets, Inc., 94 F.3d 1209, 1214 (8th Cir. 1996)). None of the conduct in this case rises to the level of the conduct in Varner. Plaintiff alleges that Case did not act in good faith because Barta could not remember the last time he had participated in sexual harassment training and because Case failed to talk to either Nogowski or any of her coworkers about her harassment complaints.

It is undisputed that Case has a written sexual harassment policy. It is undisputed that Case provided sexual harassment training, which Barta attended. The day before Plaintiff filed her April 16 grievance for "harassment," she had a meeting with another supervisor at Case where she was able to voice her complaints about Barta's behavior. When she made her June 6 complaint, she was given another meeting where she could explain her concerns. Case engaged in good faith efforts to comply with Title VII. Since Case did not act with malice or reckless indifference to Plaintiff's federally protected rights, there is no claim for punitive damages. Henderson, 217 F.3d at 619.

## DECISION

Based on the foregoing, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's North Dakota Whistleblower claim and her claim for punitive damages. In all other respects, Defendants' Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED**.

Dated this 5th day of May, 2006.

*Ralph R. Erickson*
Ralph R. Erickson, District Judge
United States District Court